## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILMA D. FRITTS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:20-00064-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security***, | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wilma D. Fritts brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 19, 20, 21) and those portions of the transcript of the administrative record (Doc. 11) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 24, 25; 8/14/2020 text-only order of reference). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 23, 26).

# I.   *Procedural Background*

Fritts filed the subject DIB application with the Social Security Administration ("SSA") on May 22, 2017. After it was initially denied, Fritts requested, and on October 18, 2018, received, a hearing on her application with an Administrative Law Judge ("ALJ") of the SSA's Office of Disability Adjudication and Review. On February 4, 2019, the ALJ issued an unfavorable decision on Fritts's application, finding her not entitled to benefits. (*See* Doc. 11, PageID.132-147).

The Commissioner's decision on Fritts's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on December 10, 2019. (*See id.*, PageID.40-45). Fritts subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must

affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*,

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is

---

185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as

"[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires that a claimant be "disabled," 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

>significant numbers of jobs in the national economy that the claimant
>can perform given the claimant's RFC, age, education, and work
>experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-

(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate

both a qualifying disability and an inability to perform past relevant work." *Moore*,

405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

"In determining whether the claimant has satisfied this initial burden, the

examiner must consider four factors: (1) objective medical facts or clinical findings;

(2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005

(11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

Cir. 1983) (per curiam)). "These factors must be considered both singly and in

combination. Presence or absence of a single factor is not, in itself, conclusive."

*Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves

that he or she has a qualifying disability and cannot do his or her past relevant

work, it then becomes the Commissioner's burden, at Step Five, to prove that the

claimant is capable—given his or her age, education, and work history—of engaging

in another kind of substantial gainful employment that exists in the national

economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing
individual steps of this five-step sequential evaluation.

764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's]

medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Fritts met the applicable insured status requirements through March 30, 2022, and had not engaged in substantial gainful activity since the alleged disability onset date of January 28, 2017.[7] (Doc. 11, PageID.137). At Step Two, the ALJ determined that Fritts had the following severe impairments: osteotendinous junction injury of the left knee; fractured head of the left fibula; contusion; mild to moderate degenerative change/osteoarthritis/tricompartmental joint space narrowing and osteophytosis of

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

the left knee post steroidal injection; bone bruise; obstructive sleep apnea (OSA) with continuous positive airway pressure (CPAP) machine; hypertension; obesity with edema and umbilical hernia status post repair per report. [8] (Doc. 11, PageID.137-138). At Step Three, [9] the ALJ found that Fritts did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 11, PageID.138).

At Step Four, [10] the ALJ determined that Fritts had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)[[11]] with no

---

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. §

404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

more than occasional stooping, bending and crouching." (Doc. 11, PageID.138-145). Based on this RFC, the ALJ determined that Fritts was unable to perform any past relevant work. (*Id.*, PageID.145).

At Step Five, after considering both the Medical Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2, and testimony from a vocational expert, the ALJ found that there existed a significant number of jobs in the national economy that Fritts could perform given her RFC, age, education, and work experience. (Doc. 11, PageID.145-147). Thus, the ALJ found that Fritts was not disabled under the Social Security Act during the relevant adjudicatory period. (*Id.*, PageID.147).

### IV.  *Analysis*

#### a.  **Vocational Expert Testimony**[12]

There are two avenues by which the ALJ may determine [at Step Five] whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocational Guidelines.

Social Security regulations currently contain a special section called the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

---

[12] The undersigned addresses Fritts's claims of error in a different order than how she presents them in her brief.

> The other means by which the ALJ may determine whether the
> claimant has the ability to adjust to other work in the national
> economy is by the use of a vocational expert. A vocational expert is an
> expert on the kinds of jobs an individual can perform based on his or
> her capacity and impairments. When the ALJ uses a vocational expert,
> the ALJ will pose hypothetical question(s) to the vocational expert to
> establish whether someone with the limitations that the ALJ has
> previously determined that the claimant has will be able to secure
> employment in the national economy.

*Phillips*, 357 F.3d at 1239–40.

At Step Five, the ALJ determined that, because Fritts had the RFC "to perform essentially the full range of light work, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.21." (Doc. 11, PageID.146). However, the ALJ also relied on the testimony of a vocational expert. The ALJ asked the vocational expert several questions at the hearing, but the only hypothetical for which the expert identified other jobs in the national economy such an individual could perform limited the individual to performing a full range of light and/or sedentary work. (*See id.*, PageID.170-171).

Fritts asserts that, because this hypothetical omitted the additional RFC provision limiting Fritts to "occasional stooping, bending and crouching," the ALJ's Step Five determination is not supported by substantial evidence. In support of this claim, Fritts relies on the established principle that in "order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quotation omitted). In response, the Commissioner claims any

error by the ALJ in omitting the "occasional stooping, bending and crouching" limitations from the hypothetical is harmless error.

Fritts does not challenge the ALJ's determination that a finding of "not disabled" was directed by the "grids" because she could "perform essentially the full range of light work," and the undersigned finds that assessment was correct. The Eleventh Circuit has held that " '[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills.' " *Phillips*, 357 F.3d at 1242 (quoting, with added emphasis, *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)). Stooping, bending, and crouching are all considered non-exertional impairments. *See* Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *5 (July 2, 1996);[13] SSR 83-10, 1983 WL 31251, at *6 (1983); *Phillips*, 357 F.3d at 1242 n.11, and the Eleventh Circuit has interpreted "significantly limit basic work skills" "as limitations that prohibit a claimant from performing a *wide* range of work at a given work level." *Phillips*, 357 F.3d at 1243 (quotation marks omitted).

---

[13] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed. 2d 967 (1990). Even though the rulings are not binding on [federal courts], [they are] nonetheless accord[ed] great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance. *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (unpublished). Additionally, courts "require the agency to follow its regulations "where failure to enforce such regulations would adversely affect substantive rights of individuals." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (quotations omitted).

The Commissioner recognizes that "stooping," "kneeling," "crouching," and "crawling" are "progressively more strenuous forms of bending parts of the body..." SSR 85-15, 1985 WL 56857, at *7 (1985). *See also* SSR 83-10, 1983 WL 31251, at *6. If a person can stoop and crouch occasionally, as the ALJ found Fritts could do here, then "the sedentary and light occupational base is virtually intact[,]" while crawling and kneeling are "relatively rare activit[ies] even in arduous work, and limitations on the ability to [perform those activities] would be of little significance in the broad world of work." *Id. See also* SSR 83-14, 1983 WL 31254, at *2 (1983) ("Two types of bending must be done frequently (from one-third to two-thirds of the time) in most medium, heavy, and very heavy jobs because of the positions of objects to be lifted, the amounts of weights to be moved, and the required repetitions. They are stooping (bending the body downward and forward by bending the spine at the waist) and crouching (bending the body downward and forward by bending both the legs and spine). However, to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)."); SSR 83-10, 1983 WL 31251, at *6 ("The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping."). Accordingly, because the limitation to "occasional stooping, bending and crouching" did not prevent Fritts from performing the full range of light work, as the ALJ found, the ALJ was entitled to rely entirely on the "grids" at Step Five to find her not disabled.

The undersigned also agrees with the Commissioner that the ALJ's failure to include the "occasional stooping, bending and crouching" limitations in his hypothetical to the vocational expert was harmless error because, for the reasons above, such limitations were either consistent with an ability to perform a full range of light and/or sedentary work, or indicated an ability to perform work at an even greater level. Accordingly, the ALJ's hypothetical to the ALJ did not actually omit any of Fritts's impairments, but rather overstated them. An RFC is a determination of the most a claimant can do in spite of her impairments; here, the vocational expert testified that Fritts would be able to perform other work under a more restrictive RFC than the one the ALJ actually assigned, given her age, education, and work experience, Therefore, the vocational expert's testimony constituted substantial evidence because the ALJ's hypothetical still comprised all of the Fritts's impairments, along with some extra. *Winschel*, 631 F.3d at 1180

Accordingly, Fritts has failed to show reversible error at Step Five.

### b.     Credibility Determination

Fritts also challenges the ALJ's credibility determination regarding her subjective testimony on limiting effects of her pain and other symptoms. No reversible error has been shown on this issue.

"If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, ... the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*,

395 F.3d at 1210 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)

(per curiam)).

> A clearly articulated credibility finding with substantial supporting
> evidence in the record will not be disturbed by a reviewing court.
> *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir. 1986). A lack of an
> explicit credibility finding becomes a ground for remand when
> credibility is critical to the outcome of the case. *Smallwood v.
> Schweiker,* 681 F.2d 1349, 1352 (11th Cir. 1982). While an adequate
> credibility finding need not cite "particular phrases or formulations ...
> broad findings that [a claimant] lacked credibility and could return to
> her past work alone are not enough to enable us to conclude that [the
> ALJ] considered her medical condition as a whole." *Jamison v. Bowen,*
> 814 F.2d 585, 588–90 (11th Cir. 1987). If proof of disability is based
> upon subjective evidence and a credibility determination is, therefore,
> critical to the decision, "the ALJ must either explicitly discredit such
> testimony or the implication must be so clear as to amount to a specific
> credibility finding." *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir.
> 1983) (ALJ did not specifically address testimony by claimant and her
> daughter about claimant's pain). Explicit credibility findings are
> "necessary and crucial where subjective pain is an issue." *Walden v.
> Schweiker,* 672 F.2d 835, 839 (11th Cir. 1982).

*Foote*, 67 F.3d at 1562.[14]

Fritts does not contend the ALJ failed to articulate a credibility finding. She

does, however, contend the ALJ erred by "recit[ing] various portions from Ms. Fritts'

medical records which purportedly supported his evaluation of her subjective

---

[14] Fritts also argues the ALJ's credibility determination did not comply with the
Commissioner's guidance in Social Security Ruling (SSR) 16-3p, 2017 WL 5180304
(October 25, 2017). That SSR eliminates use of the term "credibility" in the
Commissioner's evaluation of claimants' subjective symptoms; otherwise, Fritts has
cited nothing in that ruling that is inconsistent with current Eleventh Circuit case
law on the issue. Because SSRs are not binding on federal courts, *see* n.13, *infra*,
and because the term is generally used in Eleventh Circuit case law governing the
issue, the Court will continue to use the term "credibility" in the interest of clarity.

symptoms, while ignoring substantial evidence supporting the intensity, persistence and limiting effect of her symptoms." (Doc. 20, PageID.533).

In making a credibility determination, there is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the decision is not a broad rejection which is not enough to enable a court to conclude that the ALJ considered the claimant's medical condition as a whole. *Mitchell*, 771 F.3d at 782. Here, the ALJ's decision is not such a broad rejection. After summarizing the objective medical evidence of record, the ALJ made specific note of the findings he relied on in determining that Fritts had no greater limitations than what was in the RFC. *See* (Doc. 11, PageID.141-142); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The ALJ also noted that Fritts's subjective statements about the limiting effects of her pain were inconsistent with her activities of daily living (*see* Doc. 11, PageID.142), a finding that Fritts does not challenge. *See* 20 C.F.R. § 404.1529(c)(3)(i) (Commissioner considers a claimant's "daily activities" in evaluating severity of pain and other symptoms). The ALJ's RFC was also supported by the assessment of physical therapist Chris Ireland, who limited Fritts to light work, and the June 2, 2017 assessment of Dexter Walcott, M.D., performed less than six months after the alleged disability onset date, which the ALJ noted to have found Fritts "to be

significantly <u>less impaired</u> than" the ALJ did. (Doc. 11, PageID.142-142 (emphasis by the ALJ)). Much of this, Fritts does not address.

Fritts does argue that the ALJ gave too much emphasis to notations in Ireland's functional capacities evaluation (FCE) that Fritts was exhibiting "self-limiting behavior," correctly noting that such behavior could be due to her pain rather than attempts to manipulate the results, as the FCE form itself acknowledged. (*See id.*, PageID.452). While the ALJ did note Ireland's conclusion that the FCE was invalid due to Fritts's self-limiting behavior (*see id.*, PageID.140), the ALJ nevertheless noted that Ireland concluded Fritts could perform at a light level of work even under the self-limiting behavior, "which indicate[d] a minimum ability rather than a maximum ability." (*Id.*, PageID.143). As discussed previously, the ALJ ultimately assigned an RFC of light work, with only some bending requirements exceeding that type of work, and correctly concluded that Fritts could perform work even limited to a full range of light work. Thus, Ireland's FCE supports the ALJ's credibility determination.

Fritts also specifically challenges the ALJ's reliance on the records of orthopedist, Robert J. McAlindon, M.D., who she claims only assessed Fritts on the limited issue of a knee contusion in connection with a worker's compensation claim. However, Dr. McAlindon's records were just some of the evidence the ALJ considered as part of his credibility determination, and the ALJ even acknowledged that Dr. McAlindon's records found Fritts "to be <u>far less impaired</u>" than what the ALJ found her to be. (Doc. 11, PageID.144 (emphasis by the ALJ)).

Fritts concludes her argument on this claim of error by pointing to various other signs and diagnoses in the record that she claims support her subjective complaints of pain. However, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. Moreover, the fact Fritts can cite to some evidence cutting against the ALJ's credibility determination does not warrant reversal, as an ALJ's factual determinations, if supported by substantial evidence, must be upheld even if the evidence preponderates against them. *Ingram*, 496 F.3d at 1260. In a nutshell, Fritts largely asks the Court to view and weigh the evidence differently than the ALJ and accept her subjective complaints as credible. However, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the ALJ's in considering the record evidence. *Winschel*, 631 F.3d at 1178. As the ALJ gave a clearly articulated credibility finding supported by substantial record evidence, this Court cannot disturb that finding. *Foote*, 67 F.3d at 1562.

### c.    RFC

In her final claim of reversible error, Fritts generally asserts that the RFC is not supported by substantial evidence. However, the only issues she substantively raises largely rehash her arguments regarding Ireland's FCE and Dr. McAlindon's notes, arguments that the undersigned has found unpersuasive. As has already been noted, Ireland determined that Fritts could still perform light work even while exhibiting self-limiting behavior, and Fritts acknowledges that Dr. McAlindon

agreed, "suggest[ing] she work within the limits prescribed by the FCE." (Doc. 20, PageID.541).

Fritts also claims that the ALJ failed to account for Ireland's notation that, due to her knee pain, Fritts would "be limited in return to full work duties with activities involving squatting, work bending over with knee flexion and prolonged ambulation." However, Ireland still assessed Fritts as being "capable of sustaining the Light level of work for an 8-hour day/40-hour week" (Doc. 11, PageID.450), and the ALJ limited Fritts to light work with only occasional bending activities. As noted above, light work generally entails only occasional stooping and crouching, and little if any crawling and kneeling. As to limitations in prolonged ambulation, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. No limitations in prolonged standing were noted, and any limitation in prolonged ambulation can be offset by standing to satisfy the full range of light work.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Fritts's application for benefits is therefore due to be **AFFIRMED**.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Fritts's May 22, 2017 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**